48 CCPA

**H. D. T. COMPANY FACTORS, INC.,**
Appellant,

v.

**H. M. SINCLAIR, Jr., Trustee for the Ohio Partnership, The Sinclair Manufacturing Company, Appellee.**
Patent Appeal No. 6650.

United States Court of Customs and Patent Appeals.
April 14, 1961.

William E. Schuyler, Jr., Washington, D. C. (Francis C. Browne and Andrew B. Beveridge, Washington, D. C., of counsel), for appellant.

Freeman Crampton, Toledo, Ohio, Burns, Doane & Benedict, Washington, D. C. (James P. Burns, Washington, D. C., of counsel), for appellee.

Before WORLEY, Chief Judge, and RICH, MARTIN, and SMITH, Judges, and Judge WILLIAM H. KIRKPAT-RICK.[1]

MARTIN, Judge.

This is an appeal from the decision of the Trademark Trial and Appeal Board of the United States Patent Office, 123 USPQ 57, dismissing an opposition to the registration of the word "Coral" as a trademark for "a household liquid synthetic detergent." The applicant, appellee here, is H. M. Sinclair, Jr., as trustee for The Sinclair Manufacturing Company. The opposer-appellant is H. D. T. Company Factors, Inc., owner of the registered marks "Blue Coral" for an auto-

mobile polish and automobile cleaning and polishing service and "Blue Coral Sealer" for a polish preservative.

Applicant's detergent, "Coral," is sold in retail grocery stores and supermarkets, in 22- and 32-ounce cans, through the usual wholesale channels in all states east of the Rocky Mountains, and is intended primarily for washing dishes although it is also recommended for washing automobiles and certain textiles. The letters of "Coral" in the trademark application and displayed on applicant's goods are drawn so as to simulate rough natural pieces of coral. A first use of "Coral" in commerce on April 10, 1956, is alleged.

Opposer started to use "Blue Coral" as a trademark in 1928 in connection with a liquid cleaner and polish for automobiles. Later, opposer used "Blue Coral Sealer" in reference to a wax paste polish preservative and "Blue Coral" as a service mark. The cleaner-polish is packaged in 16-ounce bottles and the sealer is packaged in 80-gram jars and 227-gram cans. Both cleaner and sealer are blue in color and blue is the predominate color of the containers and labels.

Opposer has chosen to distribute its products solely through new automobile dealers. These dealers use opposer's products on the cars of their customers and sell the products to car owners for do-it-yourself applications. Opposer has agreements with the Cadillac and Pontiac Divisions of General Motors Corporation and with the Lincoln-Mercury Division of Ford Motor Company under which the container labels of opposer's products will recite both the name of the motor car company and opposer's name. For example, one "Blue Coral" label in evidence bears the word "Cadillac" in script letters of approximately the same size as the block letters in "Blue Coral," and also recites on the left side of the label: "Distributed by Cadillac Motor Car Division. * * * By Special Arrangement With H. D. T. Company, Fac-

1. United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate *in place of Judge* *O'Connell*, pursuant to provisions of Section 294(d), Title 28 U.S.C.

tors * * *." The right side of the label recites "A Cadillac Blue Coral Treatment Has No Equal."

The president of opposer testified that the products are shipped to the Cadillac Motor Car Division. Cadillac then ships the products to their distributors who in turn ship to their dealers. Opposer also sells and ships its products directly to other new automobile dealers, using for those shipments its own H. D. T. Company labels.

There is no dispute as to opposer's prior use of its mark. The sole issue is whether concurrent use of "Coral" and "Blue Coral" on the respective goods of the parties is likely to cause confusion or mistake or to deceive purchasers as to the source or origin of the goods.

In dismissing the opposition, the board stated:

" * * * Considering the nature of and the differences between the products of the parties together with the conditions and circumstances under which they are ordinarily sold and the differences between the marks 'Coral' and 'Blue Coral', it is concluded that purchasers would not be reasonably likely to assume that these products originated with or are in some way connected with the same producer."

Opposer urges several reasons for reversal of the board's decision. It is pointed out that "Coral" detergent can be used to wash sand and grit from automobile surfaces while "Blue Coral" can thereafter be used to clean and burnish the same surface and "Blue Coral Sealer" can finally be used to protect the resulting cleaned polished surface. It is urged that this common theme of performing different functions consecutively on the same surface to accomplish a desirable end result will associate the products in the minds of the public so that use of similar marks is likely to result in confusion. It is also asserted that materials for cleaning and polishing automobiles are ordinarily distributed along with synthetic liquid household detergents, such as that manufactured by applicant, in grocery stores, supermarkets, and drug stores. It is argued that, although opposer has chosen to restrict the marketing of its product to new car dealers, channels of distribution are subject to change and opposer should not be deprived of the presumption that all conventional modes of distribution are contemplated. Further, opposer urges that its mark, "Blue Coral," is dominated by the word "Coral" and that "Blue" is merely descriptive of the color of the products and containers.

There is no question but that "Blue Coral" is an arbitrary mark as used on opposer's product, but we do not agree with opposer that "Coral" is the feature which makes the mark distinctive in the public's mind. "Blue" is not descriptive of coral. We strongly doubt that the public associates blue with coral even though a technical description of coral includes blue and other colors. When blue is used with coral, a unique and distinctive combination is created which is not likely to be confused with "Coral" by purchasers of these products.

Although it may be customary to wash an automobile before polishing it, we believe that the products used for these two distinct purposes are so different in composition and in preparation for using that the products in and of themselves can be judged dissimilar. Also it should be remembered that the primary use of applicant's detergent is in dish washing whereas opposer's product is used to polish automobiles. The usual characteristics and uses of the products should be determinative.

Regarding the channels of trade, opposer has gone to great pains to prove that it has been selling its products, "Blue Coral" cleaner and wax, practically exclusively to the great automobile manufacturers and dealers of this country and it is just as clear that applicant channels its product through supermarkets and grocery stores. This evidence convinces us that these automobile manufacturers, such as General Motors and Ford, and the thousands of automobile dealers throughout the country identify

opposer's product by this trademark, so much so that it is unlikely that this group of purchasers or the public generally who purchase from the dealers would ever confuse opposer's products with applicant's household detergent, primarily used for washing dishes and sold under the trademark "Coral" in supermarkets and grocery stores.

Of course, as opposer argues, consideration should be given to its right to change its marketing practices, but not to the extent of concluding that similar channels of trade are probable, in view of all of the evidence that has been presented to us by the opposer to the contrary. Opposer revels in the exclusiveness of its channel of trade—the automotive industry—and we believe in reading the whole record that it is very improbable that opposer would ever use applicant's channels for trade. However, if in the future it did, we believe that the differences in the marks and the products negate the likelihood of confusion by purchasers as to the source of the goods. This is especially so if the products were sold in the same supermarkets and grocery stores in view of the shape of the letters in "Coral" in applicant's mark.

In view of our analysis of the situation, we are of the opinion that the use by applicant of its trademark on its goods is not likely to cause confusion or mistake or deceive purchasers. We therefore affirm the decision of the board.

Affirmed.

SMITH, Judge (concurring).

In concurring with the decision of the majority, I do so only for the reason that applicant's mark "Coral" as used on its household liquid synthetic detergent does not so resemble opposer's previously registered mark "Blue Coral" as to be likely to cause confusion, mistake or deception of purchasers. The marks do not sound alike or look alike. The mark "Blue Coral" calls forth a mental image and psychological response which is distinct from the imagery and psychological response called forth by applicant's mark "Coral."

Since either party may extend its business into products more closely competing than those here before us and since each party is free to change its marketing practices, I do not think it necessary or desirable to base this decision upon a comparison of the goods and the present marketing practice as is done in the majority opinion in partial support of the conclusion there reached.